1

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9    ROBERT BARROCA,                    )
                                        )
10                 Plaintiff(s),        )        No C 04-0482 VRW (PR)
                                        )
11       vs.                            )        ORDER GRANTING
                                        )        DEFENDANTS' MOTION FOR
12   SANTA RITA JAIL, et al,            )        SUMMARY JUDGMENT
                                        )
13                 Defendant(s).        )        (Docs # 41, 57 & 63)
     _____)

14

15           Plaintiff, a federal prisoner at the United States Penitentiary in Terra

16   Haute, Indiana, filed the instant pro se action for damages under 42 USC § 1983

17   alleging various violations of his federal rights while temporarily housed at the

18   Alameda County Jail, Santa Rita Facility.

19           Per order filed on July 21, 2004, the court noted that plaintiff's action

20   stemmed largely from his belief that he should have unlimited access to a

21   typewriter and dismissed all but one claim under the authority of 28 USC §

22   1915A(b).  The court found that, liberally construed, plaintiff's allegations that he

23   was assaulted by other inmates after deputy sheriffs Cooper and Fisher told the

24   inmates that plaintiff was the cause of a unit "shake down" appear to state a

25   cognizable § 1983 claim for deliberate indifference to plaintiff's safety and

26   ordered the United States Marshal to serve Cooper and Fisher ("defendants").

27   See July 21, 2004 Order at 2-4 (citing Farmer v Brennan, 511 US 825, 832

28   (1994); Valandingham v Bojorquez, 866 F2d 1135, 1138 (9th Cir 1989)).

Defendants now move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law.  They also claim that they are entitled to qualified immunity.  Plaintiff has filed an opposition and defendants have filed a reply.  (Plaintiff has also filed a surreply, which defendants have opposed.)

**BACKGROUND**

On the evening of October 4, 2003, a pill call was conducted by prison medical staff in the dining room of plaintiff's housing unit (Housing Unit 3, F-Pod).  Plaintiff, while waiting for his medication, became upset (and allegedly disruptive) because he believed that defendants were ignoring his requests to use the typewriter.  Deputy Fisher escorted plaintiff to a cell in the back hall so that the pill call could proceed without further incident.

Approximately 25 minutes later, deputy Fisher escorted plaintiff back to F-Pod and, at plaintiff's request, provided him with a prison grievance form.

Approximately two hours later, deputies Fisher and Cooper conducted a cell search of all inmate cells in F-Pod because Fisher had smelled the contraband jail-made intoxicant "pruno" during an earlier walk-through of the housing unit.  As a result of the cell search, pruno was discovered in cell F-2 and was confiscated.

Plaintiff alleges that while the search was being conducted, he was placed in a multi-purpose room along with some of the other inmates in his housing unit and that one of the inmates told everyone that the search "was caused because of one inmate, but did not tell him who."  Plaintiff further alleges that, after the search was completed, another inmate "started telling all the inmates that Deputy Fisher told him that the shakedown was caused by plaintiff."  All of the cells in F-Pod were searched that evening.

Plaintiff alleges that the next day, October 5, 2003, he "was told that all of the different racial groups and gangs were discussing assaulting [him] for causing the shake down."  Shortly thereafter, three inmates assaulted plaintiff and allegedly inflicted "superficial wounds" to his hand, back of his head and elbow.

Plaintiff claims that Fisher told other inmates that plaintiff was the cause for the cell search "with specific intent to cause plaintiff harm."  He also claims that Cooper acted in concert with Fisher.

**DISCUSSION**

A.    <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed R Civ P 56(c).  Material facts are those which may affect the outcome of the case.  <u>Anderson v Liberty Lobby, Inc</u>, 477 US 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp v Cattrett</u>, 477 US 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id.

/

3

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed R Civ P 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 US at 323.

B.      Analysis

Defendants claim that they are entitled to qualified immunity from plaintiff's claim that they violated his right to be free from violence while in custody.  Under Saucier v Katz, 533 US 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment.  The court first faces "this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  533 US at 201.  If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id at 201-02.  Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted.  Brosseau v Haugen, 125 S Ct 596, 599 (2004); Saucier, 533 US at 205-06.  If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense."  Id at 205.

/

4

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. <u>Farmer v Brennan</u>, 511 US 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Id at 833. However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. Id at 834. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to the prisoner's safety. Id.

In order for a prison official to be liable for failure to prevent harm, a prisoner must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm, id; and (2) that the prison official knew of and disregarded such a risk, id at 837. The prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id.

Showing that the prison official knew of a substantial risk of serious harm is not enough without showing indifference by that official. A prison official "who actually knew of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." Id at 844. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." Id at 844-45 (citations and internal quotation marks omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and

1    Unusual Punishments Clause." Id at 845.

2        Here, where plaintiff claims that defendants actually created the risk of

3    harm that caused other inmates to assault him, plaintiff must show that

4    defendants created a substantial risk of serious harm and that they knew of and

5    disregarded the risk they created.  Specifically, plaintiff must show that

6    defendants created a known substantial risk of serious harm by informing other

7    inmates that plaintiff was the cause of the cell search.  See, eg, <u>Valandingham v</u>

8    <u>Bojorquez</u>, 866 F2d 1135, 1138 (9th Cir 1989) (if true, allegations that prison

9    officials labeled prisoner a "snitch" with the intent of having prisoner killed by

10   other inmates, state valid claim for violation of right to be protected from

11   violence while in custody)

12       Defendants argue that they are entitled to summary judgment because

13   plaintiff has set forth no admissible evidence showing that they informed other

14   inmates that plaintiff was the cause of the housing unit search, much less that

15   they did so in order to incite violence against plaintiff.  Defendants note that

16   although plaintiff alleges that certain inmates told him and other inmates that they

17   heard deputy Fisher say that plaintiff was the reason for the cell search, there is

18   no admissible evidence to support this hearsay allegation.  The court agrees.

19       It is well-established that plaintiff's inadmissible hearsay allegation that

20   he heard from other inmates that Fisher had identified him as the cause of the cell

21   search is insufficient to defeat defendants' motion for summary judgment.  See

22   <u>Block v City of Los Angeles</u>, 253 F3d 410, 419 (9th Cir 1991) (affidavit based on

23   inadmissible hearsay inadequate to defeat summary judgment).  So are similar

24   inadmissible hearsay allegations by inmates Derek Hanson and John Lopez.  See

25   id.  None are based on personal knowledge of what Fisher allegedly said to other

26   inmates; their knowledge is based solely on hearsay.

27

28                                    6

/

Plaintiff does identify two inmates as having personal knowledge of deputy Fisher's conduct in targeting plaintiff as the reason for the search. Plaintiff claims that one of these two inmates, a pod worker named "Terry," heard Fisher say that the cell search was conducted because of "one inmate." However, plaintiff did not produce a declaration from Terry and, even if he had, it would not advance plaintiff's claim because the statement did not mention or identify plaintiff as the "one inmate." Plaintiff also claims that a second inmate pod worker, Leslie Pondela, heard Fisher state that plaintiff was the reason for the cell search. But the only evidence plaintiff offers in this regard is an unsworn and unverified declaration by Pondela. This will not do. A declaration is not admissible as evidence if not verified as true and correct and signed under penalty of perjury; consequently, Pondela's declaration is insufficient to defeat summary judgment. See Adickes v SH Kress & Co, 389 US 144, 158 n17 (1970); Nissho-Iwai American Corp v Kline, 845 F2d 1300, 1306 (5th Cir 1988).

Defendants are entitled to summary judgment because plaintiff has failed to set forth admissible evidence showing that there is a genuine issue for trial on his claim that they were deliberate indifference to his safety in violation of the Eighth Amendment. See Celotex Corp., 477 US at 323.

Plaintiff's recent plea for additional time to submit admissible evidence does not compel a different result. Plaintiff has been free to conduct discovery and compile admissible evidence since the court ordered his claim served on July 21, 2004. He has been on notice that the evidence he submitted is insufficient since defendants filed their reply on June 29, 2005. To date, however, he has submitted no admissible evidence showing a genuine for trial. Plaintiff has presented no persuasive reason to delay this matter further. Cf Nicholas v

7

Wallenstein, 266 F3d 1083, 1088-89 (9th Cir 2001) (district court did not abuse its discretion in denying motion for continuance under Rule 56(f) where plaintiffs had already conducted a large amount of informal discovery and where they did not make clear what information was sought and how it would preclude summary judgment).

Importantly, a continuance is not in order because the court is satisfied that defendants are entitled to qualified immunity as a matter of law. In Valandingham, the Ninth Circuit held that labeling a prisoner a "snitch" with the intent of having him killed by other inmates may state a valid claim for violation of the right to be protected from violence while in custody. 866 F2d at 1138. After all, intentionally labeling a prisoner a snitch amounts to creating a known substantial risk of serious harm because it is common knowledge in the prison setting that prisoners labeled "snitches" are routinely assaulted by other inmates. The same cannot be said of informing other inmates that plaintiff was the cause of a cell search that ultimately resulted in the confiscation of pruno. Even if defendants' alleged comments were imprudent, it cannot be said that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 US at 201-02. It cannot even be said that their alleged conduct created a known substantial risk of serious harm.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (doc # 41) is GRANTED. The clerk shall enter judgment in favor of defendants, terminate all pending motions (see, eg, docs # 57 & 63) as moot and for lack of merit, and close the file.

SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

8